UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY CRONIN,

    Plaintiff,

v

CHRISTOPHER ST. LAWRENCE, individually and as Supervisor of the Town of Ramapo; DAVID STEIN, individually and as a Councilmember of the Town of Ramapo; EDWARD FRIEDMAN, individually and as a Councilmember of the Town of Ramapo

Case No. 08 CIV. 6346



JUDGE KARAS
COMPLAINT

    Plaintiff, residing at 96 Viola Road, Suffern, New York, complaining of Defendant says:

### Parties

1. Plaintiff is a resident of the Town of Ramapo, County of Rockland, State of New York.

2. Defendant Christopher St. Lawrence is a resident of the Town of Ramapo, County of Rockland, State of New York, and is the elected Town Supervisor

3. Defendant Edward Friedman .is a resident of the Town of Ramapo, County of Rockland, State of New York, and is a elected Town Councilmember

4. Defendant Fran Hunter .is a resident of the Town of Ramapo, County of Rockland, State of New York, and is a elected Town Councilmember

5. Defendant David Stein .is a resident of the Town of Ramapo, County of Rockland, State of New York, and is a elected Town Councilmember

6. Defendant Town of Ramapo is a municipal corporation of the State of New York, with its principal office at 237 Route 59, Suffern, New York, in the Town of Ramapo, County of Rockland.

## Jurisdiction and Venue

7. This Court has jurisdiction pursuant to **28 USC 1331** as the claim arises under a federal statute, to wit, **42 USC 1983** and **42 USC 1981**.

## Factual Allegations

8. In or about 1996 Plaintiff became employed by Parks Department of the Town of Ramapo with the title of grounds worker and was assigned to the Spook Rock Golf Course.

9. In or about May 29, 2003, Plaintiff was promoted from the position of grounds worker to assistant greenskeeper at the Spook Rock Golf Course. A person with the title of greenskeeper, Dan Madar was the highest ranking Town employee on the site.

10. During all of his tenure working for the Town of Ramapo, the Spook Rock Golf Course had a custom, practice and usage, to wit: on alternate weekends the greenskeeper, Dan Madar, and Plaintiff, the assistant greenskeeper would both work on alternate Saturday and Sunday mornings, and otherwise be available to address issues and problems on those alternate weekends; and on the alternate weekends when Plaintiff and Madar didn't work, Billy Wanamaker, also an assistant greenskeeper, would be in charge. This practice predated Plaintiff's tenure in the job of assistant greenskeeper.

11. In the Fall of 2001, Defendant St. Lawrence was running for re-election to

his position as Town Supervisor. Plaintiff resides and owns a house at a busy street corner within the Town of Ramapo, the intersection of Viola Road and Spook Rock Road. In or about September 2001, David Stein, a friend of Plaintiff and a Town Councilman, asked Plaintiff if the re-election campaign for himself and Defendant St. Lawrence could put a sign on Plaintiff's front yard. Plaintiff agreed assuming that he meant a small one-foot by two-foot sign on wire stakes.

12. After giving his consent, Plaintiff returned home one day to find someone erecting a four-foot by eight-foot plywood sign on massive wooden supports in his front garden. Plaintiff called Defendant St. Lawrence's campaign and asked that the sign be removed, and when no one came to remove it, he removed it himself.

13. Several days after he took the sign down, Plaintiff returned home again to find the same sign re-erected in the same spot. On this occasion he took the sign down himself and returned it to Town Hall where he left it by the exterior of the Supervisor's office.

14. After these events, Plaintiff heard gossip about how he had annoyed the Town Supervisor by doing this.

15. In or about 2002, Plaintiff passed the civil service test for the position of assistant greenskeeper at the Spook Rock Golf Course, which was held provisionally by Billy Wanamaker who had not passed said test. Despite the fact that he was entitled by operation of law to the position, he was not formally promoted to this position until May 29, 2003.

16. In September 2003, Defendant St. Lawrence was again running for re-election and on a day in September 2003, Plaintiff returned home to find another four-foot by eight-foot campaign sign for St. Lawrence in his front yard. He immediately dismantled this and left it at the curb from whence it disappeared.

17. In September 2005, Defendant St. Lawrence was again running for re-election. Defendant Stein, who was again up for re-election, asked Plaintiff if the re-election slate could put a sign in his yard. Plaintiff told Stein that he, Stein, could have a sign, but he did not want one for Defendant St. Lawrence. Several days after that conversation, St. Lawrence's secretary, Jackie Eisner, called Plaintiff at home and left a message that Supervisor St. Lawrence would like to speak to him, and left a cell phone number. Plaintiff ignored this message.

18. A few days later Defendant St. Lawrence's secretary called Plaintiff at work at the golf course and said that Supervisor St. Lawrence wanted to speak to him. Plaintiff accepted this call, and St. Lawrence asked if Plaintiff would allow his sign on his front yard. Plaintiff said no. Defendant St. Lawrence became angry and changed his tone of voice and responded "what do you mean you don't want a sign? You're not supporting me?". Plaintiff answered that that was correct, and Defendant St. Lawrence then hung up the phone.

19. Thereafter on January 21, 2006, Plaintiff took the test for a promotional opening for a Grade 19 position of Maintenance Supervisor in the Parks Department. On May 5, 2006, the results were released, and Plaintiff passed with 85%. No other qualified

individual passed the test. Plaintiff was not given this job.

20. In late July, 2006, Plaintiff learned that he and his supervisor Dan Madar had both scheduled vacations for the first week in August 2006. Parks Department Director Ed Lockwood questioned whether they should both be out at the same time, but ultimately told Plaintiff that he and Madar should "work it out".

21. Plaintiff met with Madar, and reported what Lockwood had said, and discussed the idea that Wanamaker would be left in charge for that week as he was every other weekend. Madar later informed Plaintiff that he had planned a work schedule for Wanamaker for the week in question.

24. There was no written policy that said that Plaintiff and Madar could not both take vacation at the same time, and Wanamaker was the person in charge every other weekend in any event.

25. Plaintiff had the apparent approval of his supervisors Madar and Lockwood to take his vacation simultaneously with Madar.

26. Plaintiff and Madar went on their respective vacations. A few days into Plaintiff's vacation, Madar called him and told him that Lockwood was displeased and that he, Plaintiff, was suspended.

27. Thereafter, the Town filed civil service disciplinary charges against Plaintiff to terminate his employment.

28. At the disciplinary hearing, Plaintiff and Defendant Town entered into a Agreement whereby Plaintiff would accept termination in exchange for certain cash

Page 5 of 8

payments, **Exhibit A** hereto. Plaintiff did not execute a Release.

## FIRST COUNT

29. Defendant St. Lawrence is, as Supervisor, chief executive officer of Defendant Town of Ramapo.

30. All of the individual defendants are, collectively, the appointing authority for the Town of Ramapo Dept. of Parks, and make all decisions about hiring and firing.

31. On information and belief, Defendants never moved to terminate any other employee for taking duly entitled vacation time.

32. Plaintiff's termination was contrary to all custom, practice and usage within the Town of Ramapo.

33. Plaintiff's termination was retaliatory for his refusal to support Defendant St. Lawrence.

34. Plaintiff's refusal to support St. Lawrence by withholding consent to a sign was a protected exercise of his First Amendment rights.

35. Defendants acted under color of state law, contrary to **42 USC 1983**, to retaliate against and deprive Plaintiff for exercise of his civil rights arising under the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff demands Judgment on this Count pursuant to statute for compensatory and punitive damages, costs of suit, and reasonable counsel fees.

## SECOND COUNT

36. The Town Board of Defendant Town of Ramapo is the final authority in termination decisions.

37. The civil services charges and hearing were a sham, as the decision to terminate Plaintiff had already been made by Defendant St. Lawrence, who controls the Town Board through his political influence and powers of his office.

38. Plaintiff was thereby deprived of his constitutional rights to procedural due process arising under the XIV$^{th}$ Amendment to the United States Constitution; contrary to **42 USC 1983.**

WHEREFORE, Plaintiff demands Judgment on this Count pursuant to statute for compensatory and punitive damages, costs of suit, and reasonable counsel fees.

### THIRD COUNT

39. The Town Board of Defendant Town of Ramapo is the final authority in termination decisions.

40. The civil services charges and hearing were a sham, as the decision to terminate Plaintiff had already been made by Defendant St. Lawrence, who controls the Town board through his political influence and powers of his office.

41. Plaintiff was thereby deprived of his constitutional rights to substantive due process arising under the XIV$^{th}$ Amendment to the United States Constitution; contrary to **42 USC 1983.**

WHEREFORE, Plaintiff demands Judgment on this Count pursuant to statute for compensatory and punitive damages, costs of suit, and reasonable counsel fees.

Dated: June 27, 2008

COTZ & COTZ

George J. Cotz
180 Franklin Turnpike

Mahwah, New Jersey 07430
Phone 201-512-9961
Fax    201-512-9963

## JURY DEMAND

Plaintiff demands trial by jury on all issues.

COTZ & COTZ,

By
George J. Cotz