UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY CRONIN,

                         Plaintiff,

            v.                                     Case No. 08-CV-6346 (KMK)

                                                   OPINION AND ORDER
CHRISTOPHER ST. LAWRENCE, individually and
as Supervisor of the Town of Ramapo,

                         Defendant.

Appearances:

George J. Cotz, Esq.
Suffern, New York
*Counsel for Plaintiff*

Janice Gittelman, Esq.
Town Attorney of the Town of Ramapo
Suffern, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiff Timothy Cronin ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983

("Section 1983"), alleging that Defendant Christopher St. Lawrence ("Defendant"), individually

and in his capacity as Supervisor of the Town of Ramapo (the "Town"), violated Plaintiff's First

and Fourteenth Amendment rights by retaliating against him for his refusal to place Defendant's

campaign sign in Plaintiff's front yard.  Defendant moves to dismiss Plaintiff's Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  For the

reasons stated herein, Defendant's motion is granted in part and denied in part.

I.  Background

For the purposes of this Motion, the Court accepts as true all facts alleged by Plaintiff in his Amended Complaint.

In 1996, Plaintiff was hired by the Town Parks Department (the "Parks Department") as a grounds worker assigned to the Spook Rock Golf Course.  (Am. Compl. ¶ 4.) In the fall of 2001, Defendant was the Supervisor of the Town, and he was campaigning for re-election.  (*Id*. ¶ 7.) Around that time period, David Stein ("Stein"), a Town Councilman, asked Plaintiff if he would allow Stein to place a campaign sign "for himself and Defendant" in Plaintiff's front yard.  (*Id*.) Plaintiff agreed, based on his assumption that Stein meant a "small one-foot by two-foot sign on wire stakes."  (*Id*.)  Subsequently, however, Plaintiff arrived home to find that a four-foot by eight-foot sign had been erected on his lawn.  (*Id*. ¶ 8.)  Plaintiff called Defendant's campaign to have the sign removed.  (*Id*.)  No one from the campaign came to remove the sign, so Plaintiff removed it himself.  (*Id*.)  Several days later an identical sign was erected on the same spot.  (*Id*. ¶ 9.)  Plaintiff again removed the sign, this time depositing it in the Town Hall, at the exterior entrance to Defendant's office.  (*Id*.)  Following Plaintiff's removal of the signs, he allegedly "heard gossip that he had annoyed the Town Supervisor by doing this."  (*Id*. ¶ 10.)

Sometime in 2002, Plaintiff took and passed the civil service test for the position of assistant greenskeeper.  (*Id*. ¶ 11.)  Plaintiff was promoted from grounds worker to assistant greenskeeper on May 29, 2003.  (*Id*.)  Plaintiff suggests there was improper delay in promoting him to this job, to which he claims he was entitled "by operation of law."  (*Id*.)

In the fall of 2003, Defendant was again campaigning for re-election.  (*Id*. ¶ 12.)  During that time, a four-foot by eight-foot campaign sign for Defendant was placed in Plaintiff's front

2

yard.  (*Id*.)  Upon discovering the sign, Plaintiff dismantled it and left it at the curb.  (*Id*.)

Plaintiff makes no allegation of any rumors about Defendant's reaction to Plaintiff's dismantling

of the sign or any other retaliatory acts by Defendant.

   In September 2005, while Defendant and Stein were again campaigning for re-election,

Stein approached Plaintiff to ask if he could place a campaign sign in Plaintiff's front yard.  (*Id*.

¶ 13.)  Plaintiff informed Stein that while he would allow Stein's campaign sign in his yard, he

would not allow a campaign sign for Defendant.  (*Id*.)  Shortly after this conversation, Defendant

left a message for Plaintiff at his home, asking that Plaintiff return his call.  (*Id*.)  Plaintiff

ignored this message.  (*Id*.)  Thereafter, Plaintiff received another call from Defendant, this time

at work.  (*Id*. ¶ 14.)  Defendant asked "if Plaintiff would allow his sign in his front yard."  (*Id*.)

When Plaintiff refused, Defendant allegedly "became angry and changed his tone of voice and

responded 'what do you mean you don't want a sign?  You're not supporting me?'  Plaintiff

answered that that was correct, and Defendant . . . hung up the phone."  (*Id*.)

   On January 21, 2006, Plaintiff sat for an exam for a "promotional opening for a Grade 19

position of Maintenance Supervisor in the Parks Department."  (*Id*. ¶ 15.)  The results were

posted on May 5, 2006, and Plaintiff passed with a score of 85%.  (*Id*.)  No other qualified

individual passed the test, yet Plaintiff was not promoted.  (*Id*.)

   In July 2006, Plaintiff learned that both he and his supervisor, Dan Madar ("Madar"), had

scheduled vacations for the first week of August 2006.  (*Id*. ¶ 16.)  "Parks Department Director

Ed Lockwood [('Lockwood')] questioned whether they should both be out at the same time, but

ultimately told Plaintiff that he and Madar should 'work it out.'"  (*Id*.)  Plaintiff suggested to

Madar that the other assistant greenskeeper, identified in the Amended Complaint only as

"Wanamaker," could be left in charge for the week.  (*Id*. ¶ 17.)  Madar informed Plaintiff that he had planned a work schedule for Wanamaker for that week.  (*Id*.)  Plaintiff did not come away from his conversations with Lockwood or Madar with the understanding that he could not take his planned vacation.  (*Id*. ¶¶ 18-19.)  Nor was there any written policy that prevented an individual from taking his vacation at the same time as his supervisor.  (*Id*. ¶ 18.)  Accordingly, during the first week of August 2006, both Plaintiff and Madar went on their respective vacations.  (*Id*. ¶ 20.)  A few days into Plaintiff's vacation, Plaintiff received a phone call from Madar, who explained that Lockwood was displeased.  (*Id*.)  Plaintiff was notified in that conversation that he was suspended.  (*Id*.)  Following this incident, the Town filed civil service disciplinary charges against Plaintiff, seeking his termination.  (*Id*. ¶ 21.)

Before the start of Plaintiff's disciplinary hearing, Plaintiff's counsel spoke with the Town's counsel outside of Plaintiff's presence.  (*Id*. ¶ 22.)  Following this conversation, Plaintiff's counsel informed Plaintiff that the Town's ultimate goal was to terminate Plaintiff "regardless of the outcome of the [disciplinary proceedings]."  (*Id*.)  In lieu of the disciplinary hearing, the Town offered to enter into an agreement whereby Plaintiff would be deemed to have resigned in exchange for certain cash payments.  (*Id*. ¶ 23.)  Feeling that he had no alternative, Plaintiff accepted the Town's offer and resigned.  (*Id*.)

Plaintiff filed the instant action on July 15, 2008, and he filed his Amended Complaint on December 11, 2008.  Defendant subsequently filed the instant Rule 12(b)(6) Motion to Dismiss the Amended Complaint.  The Court held oral argument on July 28, 2009.

## II.  Discussion

### A  Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in his favor."  *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted and second alteration in the original).  Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . . ," *id*. at 555, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at 563.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to

plausible, [his] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the

pleader is entitled to relief.'" (internal citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))

(alteration in original)).

### B. First Amendment Retaliation

Plaintiff is a former public employee who contends that he was suspended and

constructively discharged from his position with the Parks Department in retaliation for his

refusal to post a campaign sign for Defendant in his front yard.  "To establish a First Amendment

retaliation claim, a plaintiff must show:  (1) [the] speech addressed a matter of public concern;

(2) [the plaintiff] suffered an adverse employment action; and (3) a causal connection between

the speech and the adverse employment action."  *Singh v. City of New York*, 524 F.3d 361, 372

(2d Cir. 2008); *see also Felton v. Katonah Lewisboro Sch. Dist.*, No. 08-CV-9340, 2009 WL

2223853, at *4 (S.D.N.Y. July 27, 2009).  Here, Defendant does not dispute that Plaintiff's

refusal to place the campaign signs in his yard was protected activity that addressed a matter of

public concern.  (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") 6-7.)  The Court

therefore addresses the latter two elements.

### 1. Adverse Employment Action

"[T]he proper legal test in determining whether an employment action is adverse in First

Amendment retaliation cases is whether the alleged acts 'would deter a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights.'" *Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)); *see also Rolon v. Ward*, No. 05-CV-168, 2008 WL 4700705, at *19 (S.D.N.Y. Oct. 24, 2008) (explaining that the test is "whether the alleged acts would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" (internal quotation marks omitted)).   "Adverse employment actions obviously may include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Sassone v. Quartararo*, 598 F. Supp. 2d 459, 466 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Zelnik*, 464 F.3d at 226 (explaining that "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand" constitute adverse employment actions). "This list of retaliatory conduct is certainly not exhaustive, however, and 'lesser actions may also be considered adverse employment actions.'" *Zelnik*, 464 F.3d at 226 (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)); *see also Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006) (explaining that "lesser actions may meet the adversity threshold" (internal quotation marks omitted)).   For "lesser actions" to constitute an adverse employment action, however, they "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)) (emphases omitted).

Here, Plaintiff has adequately alleged that he was subject to two adverse employment actions.   First, drawing all reasonable inferences in Plaintiff's favor, his suspension and the concurrent maintenance of disciplinary proceedings against Plaintiff in the fall of 2006 constituted an adverse employment action.   *See Washington v. County of Rockland*, 373 F.3d

310, 320 (2d Cir. 2004) (holding that the initiation of disciplinary proceedings against plaintiffs and the concomitant thirty-day suspension without pay could constitute adverse employment action); *Rolon*, 2008 WL 4700705, at *20 (holding that plaintiff may rely on two instances of suspension without pay as adverse employment actions even if plaintiff did not challenge one of the suspensions).  While a suspension might not constitute an adverse employment action if it is with pay, *see, e.g.*, *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 682 (S.D.N.Y. 2007) (holding that suspension with pay did not constitute an adverse employment action), Defendant conceded at oral argument that Plaintiff was suspended for thirty days without pay.  Therefore, Plaintiff's suspension constitutes an adverse employment action.[1]

Second, Plaintiff has alleged that he suffered an adverse employment action in the form of a constructive discharge.  "Constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation."  *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007) (internal quotation marks omitted); *see also Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003) (holding that constructive discharge occurs when an employer "intentionally creates a work atmosphere so intolerable that [the employee] is forced to quit involuntarily").  The Supreme Court has held that a constructive discharge is "functionally the

---

[1] The Court notes that if Plaintiff had been suspended with pay, the initiation of disciplinary proceeding against him, by itself, might not have constituted an adverse employment action.  "[C]ourts in this circuit have found that . . . threats of disciplinary action . . . do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation."  *Honey v. County of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002); *see also Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996) (holding that the filing of charges against employee that were not adjudicated was not an adverse employment action).

same as an actual termination" and, thus, is considered an adverse employment action.  *Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004) (holding, in the context of a Title VII claim, that constructive discharge is the functional equivalent of actual termination); *see also Ruotolo v. City of New York*, No. 03-CV-5045, 2005 WL 1253936, at *8 (S.D.N.Y. May 25, 2005) ("[A] constructive discharge . . . may satisfy the element of an 'adverse employment action' necessary to state a First Amendment retaliation claim.").[2]

Plaintiff has sufficiently alleged facts to support his claim of a constructive discharge. Although Plaintiff resigned his employment, he alleges that he did so because he "did not feel that he had any alternative."  (Am. Compl. ¶ 23.)  Specifically, Plaintiff alleges that (1) he was denied a promotion for which he was qualified (*id*. ¶ 15), (2) he was suspended and subjected to disciplinary proceedings (*id*. ¶¶ 20-21), and (3) he was told that the Town intended to terminate him regardless of the outcome of the disciplinary proceedings (*id*. ¶ 22).  Based on the combination of these events, it is plausible that Plaintiff reasonably "considered the termination of h[is] employment a foregone conclusion."  *Borrero v. Am. Exp. Bank Ltd.*, 533 F. Supp. 2d 429, 441 (S.D.N.Y. 2008) (holding that evidence suggested a constructive discharge where it showed that plaintiff reasonably believed her termination was a "foregone conclusion").  Indeed, the Second Circuit has held that a trier of fact could find an employer's statement that a plaintiff "would be fired . . . no matter what he did" sufficient on its own to establish constructive

---

[2] For purposes of analyzing whether an action constitutes an adverse employment action, courts may look to precedent established not only in the context of First Amendment retaliation claims, but also in the context of retaliation claims under Title VII.  *See Zelnik*, 464 F.3d at 227 ("Our standard for First Amendment retaliation claims has always been the equivalent to the standard set forth in *Burlington Northern* [*& Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), for retaliation claims under Title VII].").

discharge.  *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987); *accord McCalla v. SUNY Downstate Med. Ctr.*, No. 03-CV-2633, 2006 WL 1662635, at *5 (E.D.N.Y. June 8, 2006) (denying motion to dismiss Title VII retaliation claim, finding that plaintiff sufficiently alleged that he was forced to resign where, among other things, he allegedly was "informed when he arrived at his [disciplinary] hearing regarding allegations of professional misconduct that he would be fired no matter what happened" (internal quotation marks omitted)).

Thus, Plaintiff has adequately alleged that he suffered adverse employment actions in the form of a suspension and a constructive discharge.[3]

### 2. Causal Connection

Whether Plaintiff has adequately alleged a causal connection between his conduct and the adverse employment actions is a closer question.  "To establish a causal connection sufficient to survive a motion to dismiss, the 'allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action.'"  *Kempkes v. Downey*, No. 07-CV-1298, 2008 WL 852765, at *3 (S.D.N.Y. Mar. 31, 2008) (quoting *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003)); *see also Morris*, 196 F.3d at 110 (holding that a causal connection is established by allegations "sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action").  To establish this element, a plaintiff may rely on evidence showing a direct connection between the plaintiff's protected activity and the adverse action.  *See Heffernan v. Straub*, 612 F. Supp. 2d 313, 328 (S.D.N.Y. 2009) ("A plaintiff

---

[3] Plaintiff also alleges that he was not promoted to maintenance supervisor in mid-2006, despite being the only individual who passed the qualification examination for the position. (Am. Compl. ¶ 15.)  The Court does not consider whether Plaintiff's non-promotion constitutes an adverse employment action, however, because Plaintiff's counsel represented at the oral argument that this allegation is not one of the bases for his retaliation claim.

may establish causation directly, by evidence of retaliatory animus against plaintiff . . . ."); *Abel v. Morabito*, No. 04-CV-7284, 2009 WL 321007, at *2 (S.D.N.Y. Feb. 10, 2009) (noting that "direct evidence[,] such as comments by the defendants, may suffice to meet [plaintiff's] burden" of showing a causal connection between the protected activity and the adverse action). "Where such evidence is lacking, the requisite causal connection 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" *Croswell v. Triborough Bridge & Tunnel Auth.*, No. 03-CV-2990, 2007 WL 2274252, at *13 (S.D.N.Y. Aug. 7, 2007) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see also Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (holding that causal connection can be established through indirect evidence that "the protected activity was closely followed in time by the adverse action" (internal quotation marks omitted)). There is no bright line for how closely in time the adverse employment action must follow the protected activity in order to sustain the causation element. *See Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) ("This court has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."); *Heffernan*, 612 F. Supp. 2d at 328 (noting that "[t]he Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship" (internal quotation marks omitted)).

Here, Plaintiff has not offered any direct evidence that causally connects the protected activity and Defendant's alleged retaliatory actions.[4]  However, Plaintiff alleges an indirect connection between his protected activity and Defendant's unlawful retaliation.  In particular, Plaintiff alleges that his protected activity occurred in September 2005, when he last declined to place Defendant's sign in his front yard and definitively told Defendant that he did not support Defendant's re-election.  (Am. Compl. ¶¶ 13-14.)  The adverse actions alleged by Plaintiff occurred eleven months thereafter, when he was allegedly suspended in August 2006 and thereafter constructively terminated.  (*Id*. ¶¶ 20-21.)[5]  The passage of eleven months is, to say the least, at the very outer limit of the amount of time that is considered sufficient to establish causation.  *See Rouse v. City of New York*, No. 08-CV-7419, 2009 WL 1532054, at *12 (S.D.N.Y. June 2, 2009) (noting in the context of summary judgment that a "ten month period . . . stretches the bounds of the time frame that courts have allowed to support an inference of causation based on temporal proximity"); *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 617

_____

[4] Plaintiff attempts to support an inference of a causal connection by alleging that, in 2001, he overheard "gossip that he had annoyed" Defendant by removing Defendant's campaign signs.  (Am. Compl. ¶ 16.)  Mere "rumors" and "conjecture" about retaliatory animus generally are insufficient to support a causal connection.  *See Ortiz-Moss v. N.Y. City Dep't of Transp.*, No. 05-CV-4206, 2008 WL 1899950, at *15 (S.D.N.Y. Apr. 18, 2008) (dismissing retaliation claim on summary judgment where plaintiff's only support for her claim of retaliatory animus were "'rumors'" and "sheer conjecture").  Indeed, the "gossip" alleged here is of particularly little probative value given that it occurred years before the adverse employment action, and prior to Plaintiff's promotion in 2003.  Thus, the Court focuses its analysis on whether the temporal proximity between Plaintiff's protected activity in September 2005 and the alleged adverse actions (his suspension and alleged constructive discharge) in the fall of 2006 raises a plausible inference of a causal connection.

[5] The Amended Complaint does not allege when Plaintiff agreed to resign, however, the Agreement he executed (which was referred to in the Amended Complaint and attached to Defendant's motion papers) is dated September 12, 2006.  (Aff. of Janice Gittelman in Supp. of Mot. for Dismissal, Ex. E.)

(S.D.N.Y. 2008) ("While the Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, the weight of authority supports the view that ten or twelve months is too long." (internal quotation marks and footnote omitted)).  Nevertheless, there is no bright line for temporal proximity, and the time lag at issue here is at least in the range of acceptable time periods, particularly if Defendant had no earlier opportunity to retaliate against Plaintiff for engaging in protected activity.  *See McKenzie v. Nicholson*, No. 08-CV-773, 2009 WL 179253, at *5 n.5 (E.D.N.Y. Jan. 26, 2009) (denying motion to dismiss based on causal connection where thirteen months passed between the protected activity and the adverse action); *Quinby v. WestLB AG*, No. 04-CV-7406, 2007 WL 1153994, at *13 (S.D.N.Y. Apr. 19, 2007) (denying summary judgment for defendant despite eight-month gap where employer might have waited until first opportunity presented itself to retaliate); *Bernhardt v. Interbank of N.Y.*, 18 F. Supp. 2d 218, 226 (E.D.N.Y. 1998) (holding that causation was possible despite eleven-month lapse between protected activity and firing because defendant had possible reasons for delaying adverse action).  Therefore, the Court will not dismiss Plaintiff's plausible claim at this early stage.[6]  *See Rehman v. State Univ. of N.Y.*, 596 F. Supp. 2d 643, 653-54 (E.D.N.Y. 2009) (denying motion to dismiss based on lapse of eight months, noting that "the plaintiff would have an opportunity through discovery to produce direct evidence of a causal connection or to argue that, under the circumstances of this case, [the time period] is temporally close enough to support an inference of causation" (internal

---

[6] This does not mean, obviously, that the same result awaits Plaintiff at summary judgment.  For example, if Defendant can establish that he had earlier opportunities, were he so inclined, to retaliate against Plaintiff, but did not, the temporal gap may be too large to reasonably infer wrongful conduct by Defendant.

quotation marks and brackets omitted)); *Agostino v. Simpson*, No. 08-CV-5760, 2008 WL 4906140, at *7 (S.D.N.Y. Nov. 17, 2008) (denying a motion to dismiss based on causation where the temporal connection was in the range of acceptable time periods); *Batyreva v. N.Y. City Dep't of Educ.,* No. 07-CV-4544, 2008 WL 4344583, at *14 (S.D.N.Y. Sept. 18, 2008) ("[A]lthough more than two years passed between Plaintiff's [protected activity] and the alleged discrimination . . ., Plaintiff has plausibly alleged that the events are causally connected to the extent that she is required to plead such a connection at this [motion to dismiss] stage . . . .").[7]

C. Due Process

In his Amended Complaint, Plaintiff also alleges that Defendant's conduct violated his Fourteenth Amendment rights to substantive and procedural due process.  At oral argument, however, Plaintiff's counsel all but conceded that there is no viable procedural or substantive due process claim.  For the following reasons, stated briefly in light of Plaintiff's apparent concession, Defendant's Motion to Dismiss Plaintiff's due process claims is granted.

1. Procedural Due Process

Plaintiff alleges that his suspension and constructive discharge deprived him of procedural due process because the disciplinary proceedings were a "sham" and the Town had already decided that he would be terminated.  (Am. Compl. ¶ 35.)  "[T]o sustain an action for deprivation of property without due process of law, a plaintiff must first identify a property right,

---

[7] Although Plaintiff's counsel stated during oral argument that the allegedly protected conduct occurred in September 2005, the Court notes that "a generous reading of the . . . Amended Complaint could suggest that the speech in question," specifically Plaintiff's refusal to place the campaign sign in his yard, "continued through the . . . [end of the] election in which Defendant . . . was a candidate, in which event the proximity between the speech and the alleged retaliation" may be greater.  *See Agostino*, 2008 WL 4906140, at *7.

second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (internal quotation marks and emphasis omitted). Here, it is undisputed by Defendant that Plaintiff had a property interest in his employment with the Town. (Def.'s Mem. 11-13.) *See Otero v. Bridgeport Hous. Auth.*, 297 F.3d 142, 151 (2d Cir. 2002) (holding that a "public employee who has a right not to be fired without just cause . . . has a property interest in [his] employment that qualifie[s] for the protections of procedural due process" (internal quotation marks omitted) (second alteration in original)); *Chernoff v. City of New York*, No. 06-CV-2897, 2009 WL 816474, at *3 (E.D.N.Y. Mar. 26, 2009) (same). Therefore, the Court focuses its analysis on whether Plaintiff has shown the latter two elements of a procedural due process claim.

Defendant argues that because Plaintiff voluntarily resigned from his employment with the Town, Plaintiff cannot claim that he was deprived of his employment. In stating the general rule, Defendant is correct. *See Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) ("[W]here . . . [an] employee voluntarily resigns before being discharged, the resignation effectively . . . forecloses the employee from seeking the protections of her previous rights as an employee." (internal quotation marks and brackets omitted)); *Carone v. Mascolo*, 573 F. Supp. 2d 575, 597-98 (D. Conn. 2008) (holding that there was no deprivation of a property right where plaintiff voluntarily resigned from her position). Here, however, Plaintiff has alleged that he did not resign voluntarily, but rather, was constructively discharged.

"'Courts have typically addressed actual, not constructive, deprivations of protected interests.'" *Goldfarb v. Town of West Hartford*, 474 F. Supp. 2d 356, 373 (D. Conn. 2007)

(quoting *Larkin v. Town of West Hartford*, 891 F. Supp. 719, 728 (D. Conn. 1995)).

"Nevertheless, courts have recognized that Fourteenth Amendment deprivations can be

constructive as well as actual."  *Id*. (internal quotation marks omitted); *see also O'Connor v.*

*Pierson*, 426 F.3d 187, 200 n.5 (2d Cir. 2005) ("[I]f a[n] . . . employee . . . can make out a claim

of constructive discharge, then he may have the same right to bring a procedural due process

claim that he would have if he were fired."); *Illiano v. Mineola Union Free Sch. Dist.*, 585 F.

Supp. 2d 341, 355 (E.D.N.Y. 2008) (denying motion to dismiss due process claim where plaintiff

alleged that she had been forced into retirement); *Hoover v. County of Broome*, No. 07-CV-9,

2008 WL 1777444, at *7 (N.D.N.Y. Apr. 16, 2008) ("A public employee who is constructively

discharged is deprived of property within the meaning of the Fourteenth Amendment.").  As

discussed above, Plaintiff has adequately alleged that his resignation was the equivalent of a

constructive discharge.  Therefore, Plaintiff's allegations are sufficient to plead deprivation of a

property right.

Plaintiff's theory appears to be that Defendant deprived him of due process by threatening

Plaintiff with termination, thereby forcing him to resign involuntarily.  However, when a

procedural due process claim is based on "random, unauthorized acts by state employees," rather

than "established state procedures," the Due Process Clause is "not violated . . . so long as the

State provides [the plaintiff with] a meaningful postdeprivation remedy."  *Hellenic Am.*

*Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996).  Therefore,

Plaintiff's procedural due process claim only survives if he establishes that he had no available

post-deprivation remedy.  Here, because Plaintiff could have challenged his constructive

termination in an Article 78 proceeding, Plaintiff has failed to state a claim for denial of due

16

process.  As the Second Circuit held in *Giglio v. Dunn*, 732 F.2d 1133 (2d Cir. 1984), where a

plaintiff alleges that he was coerced to resign, the availability of an Article 78 proceeding

"g[ives] the employee a meaningful opportunity to challenge the voluntariness of his

resignation," *id*. at 1134-35 (explaining that pre-deprivation procedures are impossible in cases

involving coerced resignation because the voluntariness or involuntariness of the resignation

cannot be determined in advance).  Thus, the Second Circuit held that a plaintiff is not "deprived

of due process simply because he failed to avail himself of the opportunity" to challenge his

alleged constructive termination in an Article 78 proceeding.  *Id*. at 1135.  This rule has regularly

been applied to dismiss cases like this one.  *See, e.g.*, *Hoover*, 2008 WL 1777444, at *8 (holding

that there was no violation of due process where Article 78 proceeding was available to plaintiff

claiming unlawful constructive discharge); *Mulcahey v. Mulrenan*, No. 06-CV-4371, 2008 WL

110949, at *7 (S.D.N.Y. Jan. 3, 2008) ("[W]here – as in the instant case – plaintiff is not

terminated from employment, but instead claims that defendants coerced his retirement, a

pre-dismissal hearing is neither required nor practical, and an Article 78 proceeding is a

sufficient post-deprivation remedy."); *Semorile v. City of New York*, 407 F. Supp. 2d 579, 582-83

(S.D.N.Y. 2006) (holding that due process was not violated where plaintiff was allegedly coerced

to resign and relinquish his right to a disciplinary hearing, because of the availability of Article

78 proceeding); *cf. Silverman v. City of New York*, No. 98-CV-6277, 2001 WL 1776157, at *2-3

(E.D.N.Y. Nov. 19, 2001) (denying plaintiff's motion to amend complaint to add procedural due

process claim on futility grounds, explaining that in the context of an allegedly involuntary

resignation, an Article 78 proceeding is an adequate post-deprivation remedy).  Therefore,

Plaintiff fails to state a claim for a violation of his right to procedural due process, and this claim is dismissed.

### 2. Substantive Due Process

Plaintiff further claims that his suspension and constructive termination also deprived him of his right to substantive due process, because "[t]he civil service[] charges were a sham" and "the decision to terminate Plaintiff had already been made by Defendant."  (Am. Compl. ¶ 38.) "Substantive due process is an outer limit on the legitimacy of governmental action."  *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).  To establish a substantive due process violation, a plaintiff must allege that the acts of a government official were "'so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience.'"  *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (quoting *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005)) (internal quotation marks omitted); *see also O'Connor*, 426 F.3d at 203 ("Mere irrationality is not enough:  only the most egregious official conduct, conduct that shocks the conscience, will subject the government to liability for a substantive due process violation based on executive action." (internal quotation marks omitted)).

Here, the potentially "conscience-shocking" allegations that could establish Plaintiff's substantive due process claim are Plaintiff's allegations that Defendant retaliated against him for his refusal to place Defendant's campaign sign in his front yard – the same allegations that form the basis for Plaintiff's First Amendment claims.  Putting aside whether there is any plausible theory under which Defendant's alleged conduct could be considered "conscience-shocking," it is well settled that where "a specific constitutional provision, such as the First Amendment, encompasses the proscribed government conduct, a plaintiff cannot maintain a section 1983 suit

predicated on broad notions of substantive due process." *Mace v. County of Sullivan*, No. 05-CV-2786, 2009 WL 413503, at *3, *5 (S.D.N.Y. Feb. 11, 2009) (dismissing substantive due process claim where plaintiff also sought redress for conduct allegedly constituting the basis of plaintiff's claim under the First Amendment); *see also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (explaining that "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process," and holding that plaintiff could not pursue substantive due process claim where "[w]hat is allegedly shocking about what the defendants[] did is [among other things] their intent to violate plaintiff's fundamental First Amendment rights"); *Olesen v. Morgan*, No. 06-CV-959, 2008 WL 5157459, at *6 (N.D.N.Y. Dec. 8, 2008) (holding that substantive due process claim was foreclosed where the alleged conduct was explicitly prohibited under, among other constitutional provisions, the First Amendment); *see generally Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotation marks omitted)). Thus, because the conduct that forms the basis for Plaintiff's substantive due process claim is the same conduct that constitutes the basis of his First Amendment retaliation claim, Plaintiff fails to state a claim for a violation of substantive due process.

Accordingly, Plaintiff's Section 1983 claims for violation of his Fourteenth Amendment due process rights are hereby dismissed.

19

### III. Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss is granted in part and denied in part. The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 9).


SO ORDERED.

Dated:        August ⎤ , 2009
              White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

20

*ECF/Service List*:

George J. Cotz
49 Mile Road
Suffern, NY 10901
201-512-9961
Fax: (201)-512-9963
Email: cotzlaw2@aol.com

Janice Gittelman
239 Route 59
Suffern, NY 10901
(845)357-5100
Fax: (845)357-2936
Email: gittelmanj@ramapo.org